```
              IN THE UNITED STATES DISTRICT COURT
            FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
                        JACKSON DIVISION
```

**JAMES EDWARD MURPHY, #K1507**                                    **PETITIONER**

VS.                                    CIVIL ACTION NO. 3:04-CV-17-WHB-JCS

**LAWRENCE GREER AND JIM HOOD**                                    **RESPONDENTS**
_____

### REPORT AND RECOMMENDATION OF
### UNITED STATES MAGISTRATE JUDGE

### I. Procedural History

James Edward Murphy was convicted by a jury of operating a motor vehicle while intoxicated, resulting in death, after a trial on January 13 & 14, 2000, in the Circuit Court of Pike County, Mississippi. He was sentenced on January 18, 2000, to serve a term of imprisonment of twenty-five (25) years in the custody of the Mississippi Department of Corrections, with five years suspended, and supervised probation for five years.

Murphy filed a direct appeal of his conviction and sentence in the Mississippi Supreme Court, on December 27, 2000, asserting the following errors as grounds for reversal:

> A. The trial court committed error when it denied jury instruction D-11. This instruction set forth the Appellant's version of the facts, and the Appellant was entitled to have the jury consider that version and be instructed to that effect.
>
> B. The trial court committed error when it admitted into evidence results of blood tests performed at Southwest Mississippi Regional medical Center, there being no showing that the tests met the requirements of Section 63-11-(5), 63-11-19, or the Implied Consent Law, Section 63-11-1, et seq., Mississippi Code Annotated.

      C.    A new trial should be granted Appellant under the authority of McDuff v. State, 763 So.2d 850 (Miss. 2000).

      D.    The trial court committed error when it refused jury instruction D-10, which instruction defined "under the influence of intoxicating liquor" since there was no instruction which otherwise defined that term.

      E.    The trial court committed error when it instructed the jury that "simple negligence is sufficient for conviction in this case under the law," since the instruction failed to tell the jury what acts or omissions on the part of the defendant constituted negligence.

On October 16, 2001, the Mississippi Court of Appeals affirmed Petitioner's judgment of conviction and sentence in a published opinion. Murphy v. State, 798 So.2d 609 (Miss. App. 2001), reh'g denied, March 18, 2002, cert. denied, March 26, 2002, reconsideration denied, October 7, 2002, cert. denied, 537 U.S. 1125 (2003).

Thereafter, on January 5, 2004, Murphy filed an "Application for Leave to File Post-Conviction Motion to Vacate Convictions and Sentences" in the Mississippi Supreme Court. He raised the following grounds:

      A.    Petitioner was denied effective assistance of counsel by counsel's failure to investigate and object to the fact the court committed reversible error in allowing a subsequent amendment to be made to the indictment by the court and not the grand jury.

      B.    Petitioner was denied his right to effective assistance of counsel, where counsel failed to pursue on direct appeal

>     the fact that the court allowed the
>     inherently prejudicial testimonies of Dr.
>     Barry Suber, Dr. Stephen Hayne, and
>     hospital staff over the objection of
>     defendant asserting his physician/patient
>     privilege; testimonies which were
>     inadmissible under Rule 503 M.R.E. and
>     Section 13-1-21 M.C.A.

By Order filed March 17, 2004, the Mississippi Supreme Court denied the petition, holding in part that "the motion fails to make a substantial showing of the denial of a state or federal right as required by Miss. Code Ann. § 99-39-27(5)."  **Exhibit F** to Respondents' Answer.[1]

On January 12, 2004, Murphy filed his Petition for Writ of Habeas Corpus in this Court, assigning the same grounds for relief as he set forth in his direct appeal, as quoted hereinabove.  It is unclear whether Murphy intended to raise the issue of ineffective assistance of counsel in this Petition.  The State did not respond to that issue, which was included in Murphy's post-conviction motion and rejected by the Mississippi Supreme Court.  Out of an abundance of caution, the undersigned has also considered Murphy's Sixth Amendment claims.

The Respondents assert that the applicable portions of the Antiterrorism and Effective Death Penalty Act of 1996 ["AEDPA"], Pub. L. 104-132, 110 Stat. 12144, prevent this court from granting relief based upon Murphy's petition.

## II.  Standard of Review

---

[1] All references to exhibits are to those contained in the Respondents' Answer.

3

The instant case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), contained in 28 U.S.C. 2254(d) (2002). The applicable provision provides as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or *involved an unreasonable application of, clearly established Federal law*, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (emphasis added).

Under AEDPA, where the state court adjudicated the petitioner's claim on the merits, this Court reviews questions of fact under § 2254(d)(2), while questions of law or mixed questions of law and fact are reviewed under § 2254(d)(1). Factual findings are presumed to be correct, and the Court defers to the state court's decision regarding factual determinations unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Hill v. Johnson, 210 F.3d 481, 485 (5th Cir. 2000); § 2254(d)(2). The Court independently reviews questions of law and mixed questions of law and fact to determine whether the state court's decision thereon was either "contrary to" or an "unreasonable application of"

federal law.  Williams v. Taylor, 529 U.S. 362, 403-408 (2000); Hill, 210 F.3d at 485.

The first step in this inquiry is to determine what federal law should be applied to the state court's decision. Williams, 529 U.S. at 404.  The determinations of the state courts must be tested against "clearly established Federal law, as determined by the Supreme Court of the United States."  Id.; § 2254(d)(1).  Next, this Court must determine whether the state court's decision was "contrary to" that established Federal law.  The proper standard is an **objective** one, not subjective.  Id. at 408-409.  The term "unreasonable" was distinguished from "erroneous" or "incorrect"; thus, a state court's incorrect application of the law may be permitted to stand if it was, nonetheless, "reasonable."

A summary of the AEDPA law is that ultimately, "[t]o prevail on a petition for writ of habeas corpus, a petitioner must demonstrate that the state court proceeding 'resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" Robertson v. Cockrell, 325 F.3d 243, 247-48 (5th Cir. 2003) (en banc) (quoting 28 U.S.C. § 2254(d)(1) (2000)). The courts have no authority to grant habeas corpus relief simply because "we conclude, in our independent judgment, that a state supreme court's application of [federal] law is erroneous or incorrect." Catalan v. Cockrell, 315 F.3d 491, 493 (5th Cir. 2002) (citation and quotation omitted).

### III.  Facts

The facts of the case are set forth in the Mississippi Supreme Court's opinion, 798 So.2d at 613, and in the transcript of the trial.  The evidence indicates that on October 24, 1998, James Murphy was driving south on Highway 51 in Pike County.  He crossed over into the northbound lane and collided head-on with Mrs. Elsie H. Elliott's vehicle.  Mrs. Elliott died soon after the accident.

Murphy is an insulin-dependent diabetic.  He testified that his blood sugar lowered just prior to the accident, causing him to lose control of his car.  He also admitted at the hospital that he had consumed several beers at the Desperado Club just prior to the accident.

Ms. Beulah Hall and Charles Lewis witnessed the accident.  Ms. Hall testified that Murphy's car began swerving off the road about a mile before the collision site.  Once Murphy went into the northbound lane, he remained driving there for a significant amount of time until the collision.  Mr. Lewis corroborated Ms. Hall's testimony.

Simone Ott, an employee for the Mississippi Bureau of Narcotics, drove up within minutes after the accident and stopped to help.  She helped Murphy out of his vehicle and testified that she could smell alcohol coming from Murphy.  Deputy Sheriff John Foreman, Officer Chillis Crawford, and an ambulance then arrived.  Foreman testified that he could smell strong alcohol coming from Murphy, and Crawford stated that Murphy's eyes were red, his voice crackled, and he had difficulty finding his license.  Murphy told

Crawford that he had not consumed any alcohol prior to the accident, and he was not arrested at the scene.

Murphy's blood sugar was tested prior to arriving at the hospital, and it registered 84, a low-normal reading, but not indicative of a loss of consciousness, according to testimony. As a precaution, Dr. Barry Suber placed Murphy on an IV when he arrived at the hospital. Dr. Suber ordered blood samples due to Murphy's diabetes. The accident occurred at approximately 1:37 p.m., Murphy arrived at the hospital at approximately 2:18 p.m., and this first blood test was taken at 3:00 p.m. This test revealed a .13 blood alcohol content. A few hours later, the Highway Patrol requested a blood sample for the purpose of testing his ethyl alcohol level. This test, taken at 5:00 p.m., registered Murphy's blood alcohol content at .07 percent. Dr. Stephen Hayne testified that a person who registered .07% at 5:00 p.m. would have registered between .15% and .17% at 1:30 p.m.

Murphy was indicted under Miss. Code Ann. § 63-11-30(4) (Rev. 1996), amended by Miss. Code Ann. § 63-11-30(5) (Supp.2000). The indictment was amended by Order of the Court to quote the language in the statute precisely.[2] Attorney Wayne Dowdy represented Murphy

---

[2] The initial indictment, filed January 14, 1999, provided in part as follows:
> ... James E. Murphy, late of county aforesaid, on or about the 24th day of October, 1998, in Pike County, Mississippi, and within the jurisdiction of this court, did unlawfully and feloniously, while operating a motor vehicle in a negligent manner, cause the death of another, namely Elsie H. Elliot, with a

at trial and on direct appeal, and the prosecuting assistant district attorney was attorney Danny Smith. Circuit Judge Mike Smith was the trial judge.

## IV. Discussion of Assigned Errors and the Applicable Law

### A. Did the Jury Instructions Render Murphy's Trial Constitutionally Unfair? (Grounds A, D, & E)

In Ground A, Murphy contends that the trial court erred by refusing to instruct the jury as to his version of the facts, proposed instruction D-11.[3] In ground D, Murphy asserts that

---

> motor vehicle, to wit: one 1992 Dodge Stealth automobile, at a time when he, the said James E. Murphy, was then and there operating said 1992 Dodge Stealth automobile, while under the influence of intoxicating liquor and while he, the said James E. Murphy, was above the legal age to purchase alcoholic beverages under the laws of the State of Mississippi and *had more than ten one-hundredths percent (.10%) blood alcohol content in his blood*, contrary to and in violation of Section 62-11-30(1)(a)(c) and (4) of the Mississippi Code of 1972, and against the peace an dignity of the State of Mississippi. ...

R. Vol. 1, p. 3.

The amendment changed the italicized wording in the indictment to : "... had ten one-hundredths percent (.10%) or more blood alcohol content in his blood...." R. Vol. 1, p. 26.

[3]The proposed jury instruction D-11 is set forth as follows:

> In order for you to find the Defendant guilty, you must find, beyond a reasonable doubt, that on October 24, 1998, he was driving a vehicle while under the influence of

8

proposed instruction D-10[4] should have been granted because it defined the term "under the influence of alcohol" for the jury, and no such defining instruction was given. And, in Ground E, Murphy contends that the court erred in instructing the jury that "simple negligence is sufficient for conviction in this case under the law," as it failed to explain to the jury what acts or omissions constitute negligence.

The Mississippi Court of Appeals held that proposed jury instruction D-11 was an "obvious misstatement of the law," and

---

> intoxicating liquor or had an alcohol concentration one ten one-hundredths percent (.10%) or more.
> You must also find that, because he was under the influence of intoxicating liquor or had an alcohol concentration of ten one-hundredths percent (.10%) or more, he operated this motor vehicle in a negligent manner and caused the death of Elsie H. Elliott.
> Therefore, if you find that the Defendant's negligent operating of his vehicle, i.e., while proceeding south on Highway 51 crossing into the northbound lane of traffic and driving there until the collision with Mrs. Elliott's vehicle, was cause by another condition, low blood sugar, then you must find the Defendant "Not Guilty."

R. Vol. 1, p. 40. The trial judge denied the instruction by writing "Denied. All that is required is over .10% alcohol" on the proposed instruction.

[4] Proposed D-10 instructed that the phrase "'under the influence of intoxicating liquor' is defined as a condition in which intoxication liquor has so far affected a driver's nervous system, brain, or muscles as to impair, to an appreciable degree, the driver's ability to operate a car." The trial judge wrote "Denied. All that is required is over .10% alcohol" on the proposed instruction. R. Vol. 1, p. 39.

9

stated that a trial judge's refusal to give an inaccurate instruction is not grounds for reversal. 798 So.2d at 613, citing Collins v. State, 691 So.2d 918, 925 (Miss. 1997). Under Mississippi law, a conviction under § 63-11-30(4), does not require a *causal connection between the consumption of alcohol and the subsequent negligent act."* 798 So.2d at 693, citing Ware v. State, 790 So.2d 201 (Miss.Ct.App. 2001). The court concluded that because D-11 instructed the jury to acquit if it could not find that Murphy's consumption of alcohol caused him to veer into the northbound lane of Highway 51, it was an incorrect synopsis of the law.

As to Instruction D-10, wherein a definition of "under the influence of intoxicating liquor" was given, the court of appeals noted that under Mississippi law, all that is required for a conviction is *either a .10 blood alcohol* or merely being under the influence of intoxicating liquor. Because the evidence "clearly demonstrated" that Murphy had more than a .10% blood alcohol content, the court found that any error by the trial court not instructing as to the definition of "under the influence" would have been harmless. Id. at 615.

Finally, the court of appeals rejected Murphy's argument that the trial court erred by failing to tell the jury what acts or omissions on the part of the defendant constituted negligence. Instead, the court instructed the jury only that "negligence is the failure to use reasonable care under the circumstances." R. V. 1, p. 29, Instruction 6. The court of appeals found that the

Mississippi Supreme Court explicitly upheld such an instruction in § 63-22-30(4) cases in Holloman v. State, 656 So.2d 1134, 1140 (Miss. 1995). Id. at 616. Hence, the failure to instruct further was no error.

Generally, challenges to jury instructions may not form a basis for federal habeas corpus relief. Gilmore v. Taylor, 508 U.S. 333, 342 (1993). Only if an instruction was so unfair as to rise to the level of a constitutional violation would relief be appropriate. Id. A jury instruction should not be given when the charge is not supported by the evidence, and due process does not require otherwise. Hopper v. Evans, 456 U.S. 605, 611 (1982). All of these arguments regarding the jury instructions only related to purported errors of state law, even though the Petitioner has attempted to frame them as constitutional. The Mississippi Supreme Court may interpret its own law, and this Court does not sit as a super state court to review supposed errors of state law. "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state law questions." Trevino v. Johnson, 168 F.3d 173, 184 (5th Cir. 1999).

Only if any of these errors so unfairly prejudice his trial so as to render it fundamentally unfair would it violate Murphy's Due Process rights. The issue for this Court is not whether state law was violated, or whether any error prejudiced the Petitioner. The issue is whether the giving of the instruction or the failing to give the instruction "so infected the entire trial that the

resulting conviction violates due process." Galvan v. Cockrell, 293 F.3d 760, 764-65(5th Cir. 2002), citing Cupp v. Naughten, 414 U.S. 141, 147 (1973).  Even then, our review is limited to determining whether the state court's decision was an *unreasonable application of clearly established federal law*, or contrary to such law, under AEDPA.

Instead, we find that the claims regarding the jury instructions simply are not of a constitutional magnitude and that the state court's decision is entirely reasonable and violates no federal law.  Mississippi law does not require that the defendant's negligence be related to his alcohol consumption for a conviction under the statute.  Hence, no error occurred by not so instructing.  Further, Mississippi law does not require a more detailed definition of negligence, and the failure to further instruct the jury is not unfair in a constitutional sense.  The same analysis applies to the trial court's failure to instruct the jury regarding the definition of being under the influence.  These simply do not cumulate to render Murphy's trial unfair in a constitutional sense.  The undersigned finds that the appellate court's decision cannot be found to be unreasonable or incorrect.

### B.  Did the Blood Testing and Admission of the Tests Violate the Fourth Amendment?   (Grounds B & C)

Whether the seizure of Murphy's blood was illegal is a mixed question of law and fact and habeas relief could be granted only if the Mississippi Court of Appeals's decision was an unreasonable application of clearly established Federal law.  In his direct

12

appeal, Murphy contended that the first blood test, taken at Southwest Mississippi Regional Medical Center, should not have been admitted because it was not taken according to the requirements of the Implied Consent Law, Miss. Code. Ann. of § 63-11-1 *et seq.*, specifically § 63-11-5, which provides how the testing must be administered.  The court of appeals rejected this contention, holding that the admissibility of evidence in a judicial proceeding is decided by judicial rather than legislative pronouncement; accordingly, because the test results were relevant to the issue of whether Murphy had been intoxicated at the time of the accident, the tests were properly admitted.  798 So.2d at 614.  The analysis was not couched in terms of the Fourth Amendment.

 Murphy did not object at trial to the admission of the second blood test, most probably because it showed a less than .10% result.  After the earlier test showing over .10% was admitted over his objections, defense counsel probably wanted the second test results before the jury in an attempt to mitigate.  However, on appeal, Murphy contended that the second blood test's admission into evidence entitled him to a new trial under the authority of McDuff v. State, 763 So.2d 850 (Miss. 2000), a case rendered after Murphy's trial.  The Mississippi Court of Appeals held that any error by the admission of the second test, which showed *under* .10% alcohol content, did not prejudice Murphy since the first test, showing .13%, was clearly admissible.  798 So.2d at 614.  The court did not apply a Fourth Amendment analysis but rather ruled based upon the lack of prejudice to Murphy.  However, their decision did

not unreasonably apply federal law regarding illegal searches and seizures.  Murphy argues in his Traverse that the test **was** prejudicial and that it was more prejudicial than the first.  The state court disagreed, and that decision did not violate any clearly established federal law in this regard.

The Fourth Amendment of the United States Constitution protects the right of the people "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  In Fourth Amendment cases, a collateral review by a habeas court is primarily limited to a review of the trial court's suppression hearing.  In Stone v. Powell, 428 U.S. 465, 494 (1976), the Supreme Court held that "where the state has provided an opportunity for full and fair consideration of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial."  *See also,* Lofton v. Whitley, 905 F.2d 885, 889, n.5 (5th Cir. 1990);   Lucas v. Johnson, 132 F.3d 1069, 1083 (5th Cir. 1998); Penry v. Lynaugh, 832 F.2d 915, 918 (5th Cir. 1987);  Bell v. Lynaugh, 828 F.2d 1085, 1091-92 (5th Cir. 1987).  This preclusion on federal courts to grant habeas corpus relief based on a Fourth Amendment violation acts as a bar to such relief "absent a showing that the state prisoner was denied an opportunity for a full and fair litigation of that claim at trial and on direct review."  Davis v. Blackburn, 803 F.2d 1371, 1372 (5th Cir. 1986) quoting Stone, 428 U.S. at 494 n.37.  The burden is on the habeas petitioner to plead and prove

the denial of a full and fair hearing in state court.  <u>Davis</u>, 803 F.2d at 1372.

We find that Murphy has failed in his burden of showing he was denied a full and fair hearing on any potential Fourth Amendment claims he may have had.  He filed a motion *in limine* regarding the admission of the first test, R. V. 1, pp. 22-23.  He was given an opportunity for argument on the motion and could have called any witnesses.  R. V. 2, pp. 26-31; 103-109.  His counsel objected throughout trial to all witness testimony regarding the test.  The court heard argument on each objection, many outside the jury's presence, and overruled all objections.  Murphy has set forth no specific rulings that actually prevented him from presenting any evidence he wished to enter in the suppression hearings; he has not identified any witness or evidence which he <u>could</u> have presented and did not.

The Court of Appeals for the Fifth Circuit has concluded that the "opportunity for full and fair litigation" "means just that: 'an opportunity.'" <u>Janecka v. Cockrell</u>, 301 F.3d 316, 320 (5th Cir. 2002), <u>citing</u> <u>Caver v. Alabama</u>, 577 F.2d 1188, 1192 (5th Cir. 1978).  The record confirms that Murphy was provided such an "opportunity" to present all of the claims regarding the results of the blood tests to the state courts.

It is not this Court's role to review the Mississippi courts' decisions regarding probable cause or the legality of the admission of the tests; <u>Stone</u> requires us to defer to the fact that was granted a full and fair hearing on this issue in the trial court.

Yet, we find no federal cases which would render the admission of this evidence illegal.  No habeas relief may be granted based upon the claims regarding the admission of the blood tests of Murphy.  The undersigned finds that these issues are primarily evidentiary issues and matters of state law.

### C. Was Murphy Denied His Right to Effective Assistance of Trial Counsel? (Contained in memorandum submitted with petition)

We also find that no relief can be granted based upon any deficiencies on the part of Murphy's attorney.  In his post conviction motion, Murphy contends that his attorney should have objected to the amendment of the indictment and that he should have raised the issue of physician/ patient privilege in the direct appeal.  We find that none of his assertions in this regard have merit, and that no actual **deficiency** on the part of his counsel has been stated.  An indictment may be amended when the amendment goes to form and not to substance in Mississippi.  Rambus v. State, 804 So.2d 1052, 1060-61 (Miss.Ct.App. 2001).  If the defenses available to the defendant under the original indictment are equally available under after the amendment, then the amendment goes to form.  Id.  Any objection to the amendment to the indictment would have been futile, and the failure to assert a meritless objection cannot be grounds for a finding of deficient performance.  Emery v. Johnson, 139 F.3d 191, 198 (5th Cir. 1997) citing Clark v. Collins, 19 F.3d 959, 966 (5th Cir. 1994).  We also find no deficiency regarding the appeal and the failure to raise the physician/ patient privilege.

The standard for determining the effectiveness of counsel is the two-prong test set forth by the Supreme Court in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), which was applied by the Mississippi Supreme Court in this case. Applying <u>Strickland</u> to Murphy's claims regarding his attorney, the Mississippi Supreme Court found that no constitutional violation existed. <u>Strickland</u> provides "clearly established federal law" regarding claims of ineffective assistance of counsel. Unless the Mississippi court's decision was an *unreasonable application* of <u>Strickland</u>, no habeas relief may be granted. We find that the Mississippi court properly applied the <u>Strickland</u> test, and no habeas relief may be granted.

## V. Conclusion

We have thoroughly reviewed both the trial record and the appellate record regarding Murphy's conviction for DUI manslaughter. His trial and appellate counsel ably performed, bringing the pertinent legal issues before the courts in an effective manner. His trial was conducted in a fair manner, and he was allowed to call any witnesses to all motion hearings and to the trial. We find no errors which have permeated these proceedings so as to render his trial unfair in a constitutional sense. No habeas relief may be granted under the circumstances of his case.

It is therefore the recommendation of the undersigned United States Magistrate Judge that the petition of James E. Murphy be dismissed with prejudice and that a Final Judgment in favor of the Respondents be entered.

The parties are notified that failure to file written objections to the proposed findings, conclusions, and recommendation contained within this report and recommendation within ten days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  28 U.S.C. §636, Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

This the 12th day of April, 2006.


S/ James C. Sumner
UNITED STATES MAGISTRATE JUDGE